**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
:
HERIBERTO BATIZ,                            :
                                            :  Civil Action No. 09-2849 (RBK)
         Plaintiff,                         :
                                            :
         v.                                 :  **O P I N I O N**
                                            :
FEDERAL CORRECTIONAL                        :
INSTITUTION, et al.,                        :
                                            :
         Defendants.                        :
_____:

**APPEARANCES**:

Heriberto Batiz, Pro Se
#14875-014
MDC Brooklyn
P.O. Box 329002
Brooklyn, NY 11232

Karen Helene Shelton, Esq.
Office of the U.S. Attorney
402 East State Street
Trenton, NJ 08608
Attorney for Defendants

**KUGLER, District Judge**

   Plaintiff, Heriberto Batiz, currently incarcerated at the Metropolitan Detention Center, Brooklyn, New York, filed a complaint under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), alleging that defendants Federal Corrections Institution Fort Dix, Federal Prison Industries, Inc., Correctional Officer James, Correctional Officer Meyers, Jeff Eobstel, Manuel Calaguio, Sam Syjontian, Dr.

Filepo Patel, Dr. Nicolette Turner-Foster, Warden Grondolsky, and Health Administrator Spaulding, have violated his constitutional rights.

Defendants have filed a motion to dismiss (docket entry 14). Plaintiff has not opposed the motion. The Court has reviewed the Defendants' submission and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the following reasons, the motion will be partially granted. The remaining Defendants will be ordered to answer the claims of the complaint.

## BACKGROUND

The following facts are taken from Plaintiff's complaint. On June 11, 2009, Plaintiff filed this civil complaint, alleging that on October 14, 2008, he injured his back while lifting a computer, weighing about thirty pounds, at his UNICOR prison job site.[1] He immediately reported the incident to his supervisor, defendant Officer James. Officer James advised Plaintiff to

---

[1] Defendant "Federal Prison Industries (commonly referred to as FPI or by its trade name UNICOR) is a wholly-owned, Government corporation established by Congress on June 23, 1934. Its mission is to employ and provide job skills training to the greatest practicable number of inmates confined within the Federal Bureau of Prisons; contribute to the safety and security of our Nation's Federal correctional facilities by keeping inmates constructively occupied; produce market-priced quality goods and services for sale to the Federal Government; operate in a self-sustaining manner; and minimize FPI's impact on private business and labor." <<http:// www.bop.gov/inmate_programs/unicor.jsp>>.

relax and stay on the job, and to visit medical services in the morning.  Because he was in "excruciating" pain, he went to medical that evening, and received an injection and "mild medication" from defendant Calaguio, a Physician's Assistant.  Despite the fact that Plaintiff had a "serious problem walking," defendant Calaguio did not examine Plaintiff or provide him with any walking support devices.

The next day, Plaintiff was seen by defendant Calaguio, who gave him acetaminophen, and instructed him to come back later for an injection.  Plaintiff came back but was not administered the injection.  Plaintiff saw defendant Calaguio on October 14, 15, 17 and 27th of 2008, and on the October 17 visit, received a cane, after falling due to being dizzy from the medication prescribed by defendant Calaguio.

Plaintiff had some difficulty dealing with officers on his work site for his UNICOR job for the seven days following his injury.  Although he followed the FPI rules and told the officers he was in extreme pain, FPI Supervisors treated him as if he were faking his injury, would not grant him convalescent leave, and instructed him to maintain his regular work assignments.  On October 30th, he received an "idle" relieving him from his job assignment for two weeks.  However, he claims that he was not paid for the work time he missed due to his injury.  Notably, on October 31, defendant Syjontian, who issued Plaintiff the cane,

and Dr. Patel arranged for Plaintiff's work assignment to be changed from UNICOR to food services.

Plaintiff states that his October 14th work injury could have been avoided if the FCI medical staff notified UNICOR that Plaintiff had a prior medical problem that was documented in his medical file.  The prior medical problem was that Plaintiff had a chest infection, and the medication that was prescribed to treat it gave him adverse reactions, including dizzy spells.  Plaintiff states: "Certainly, considering Plaintiff's documented weak physical condition, health services had an obligation to apprise Plaintiff's work supervisors."

Plaintiff contends that during November and December 2008, he remained in pain, and that health services ignored his sick call requests on three occasions.  The pain medication he was prescribed was ineffective.  He was denied on four occasions a renewal of his medical "idle."  Plaintiff states that he continues to work for food services, wrapping plastic utensils, in spite of his extreme pain while doing so.

Plaintiff notes that he did receive an MRI of his back, which revealed more damage to his back than a previous MRI from his prior facility in 2007.  He states that it is obvious that he needed surgery for his back, and that "one has not been scheduled neither has the Plaintiff been allowed to discuss the result of

4

his MRI test with an independent surgeon which is standard prison policy."

Plaintiff states that from January 2009 until the date he filed this complaint, his pain has worsened rather than improved. In January, his medication was increased, which led to dizzy spells, resulting in a fall down a staircase on January 16. Plaintiff was seen by defendants Calaguio and Turner, who gave him a quick, cursory exam, had him fill out an accident report, and told him to perform stretching exercises.

Plaintiff notes that defendants Patel and Turner have prescribed medications for him, which were not effective, and which he claims are mind altering drugs, not preferred medication that would "improve his infirmity." He states that he has not received physical therapy, has not met with a medical professional to review MRI results, and has not met with an independent surgeon to review a surgery option. Plaintiff asserts that "his treatment plan, if one exists, is not improving his infirmity."

He also complains that he has not received convalescent pay for the time he missed at work for his injury. He is concerned that he will be disabled for life unless he receives "immediate, successful treatment." Plaintiff contends that because he lost his job at UNICOR, he cannot pay tuition for an Auto Mechanics

Program in which he was enrolled, "nor is he physically fit to pursue this program."

Plaintiff asks for monetary relief, and for lifetime medical care.

## DISCUSSION

**A.   Standard of Review**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis.  See Ashcroft v. Iqbal, -- U.S. --, --, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions. See Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the

6

elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950.  Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. See id.

**B.   Analysis**

   1.   Defendants' Motion to Dismiss

In this case, Defendants argue that defendants Warden Grondolsky and Health Services Administrator Spaulding should be dismissed from this action because they are not mentioned in the body of Plaintiff's complaint and have not been shown to be personally involved in this action; therefore, Defendants argue that the claims against them should be dismissed under a theory of respondeat superior.  Defendants also argue that defendants Eobstel, Myers, and James should be dismissed because they cannot be liable for Plaintiff's medical care claims as non-medical personnel.  Finally, Defendants argue that Plaintiff's Bivens claim asserting unconstitutional medical care should be dismissed for failure to rise to the level of a constitutional violation. Plaintiff has not filed opposition to the motion.

2.  *Bivens* Standard

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment.  In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.  The Supreme Court has also implied Bivens damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and the Fifth Amendment, see Davis v. Passman, 442 U.S. 228 (1979).

In order to state a claim under Bivens, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  See Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn. 1987)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)).

Bivens actions are analogous to suits under 42 U.S.C. § 1983 against state officials who violate federal constitutional or statutory rights.  The two bodies of law are not "precisely parallel;" however, there is a "general trend" to incorporate § 1983 law into Bivens suits.  See Egervary v. Rooney, 80 F. Supp.

2d 491 (E.D. Pa. 2000) (citing Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987)).

    3.   Supervisor Liability

Local government units and supervisors typically are not liable under § 1983 solely on a theory of *respondeat superior.* See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8 (1985); Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690-91 (1978). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior.* Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

A § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n. 55. "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the

violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

With respect to Plaintiff's claims against federal officials Grondolsky and Spaulding, the Third Circuit has held that liability may not be based on *respondeat superior.* See Balter v. United States, 172 Fed. Appx. 401, 403 (3d Cir. Feb. 15, 2006)(unpubl.)(citing Ruiz-Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000)(collecting cases)); Richards v. Pennsylvania, 2006 WL 1913377 at *2 (3d Cir. July 12, 2006)(unpubl.); Parker v. United States, 2006 WL 2547233 at *1 n.1 (3d Cir. Sept. 6, 2006) (unpubl.); see also Laswell v. Brown, 683 F.2d 261, 268 & n.11 (8th Cir. 1982), cert. denied, 459 U.S. 1210 (1983) (basing its conclusion on the fact that the Supreme Court has looked to § 1983 cases in evaluating the nature of defendant officials' qualified immunity); Kite v. Kelly, 546 F.2d 334, 337-38 (10th Cir. 1976).

Here, however, Plaintiff does not assert personal involvement, knowledge and acquiescence of the supervisory officials, namely, defendants Grondolsky and Spaulding, either through allegations of actual participation and personal direction, or of actual knowledge and acquiescence of a policy, plan or procedure. See Rode, 845 F.2d at 1207. Thus, the claims against these defendants are predicated solely on the basis of

supervisor liability.  Accordingly, these defendants must be dismissed from this action.

    4.   Eighth Amendment Medical Care Standard

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege a serious medical need and behavior on the part of prison officials that constitutes deliberate indifference to that need.  See id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. See Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. See Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

Therefore, in summary:

Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the

> inmate "to undue suffering or the threat of tangible
> residual injury," deliberate indifference is manifest.
> Similarly, where "knowledge of the need for medical
> care [is accompanied by the] ... intentional refusal to
> provide that care," the deliberate indifference
> standard has been met.  ... Finally, deliberate
> indifference is demonstrated "[w]hen ... prison
> authorities prevent an inmate from receiving
> recommended treatment for serious medical needs or deny
> access to a physician capable of evaluating the need
> for such treatment."

<u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3d Cir. 1987)(internal citations omitted).

    5.   <u>Claims Against Eobstel, Meyers, and James.</u>

Plaintiff asserts that Officer James, his supervisor at his job, acted with deliberate indifference when, after Plaintiff reported that he had just injured himself lifting the computer, he instructed Plaintiff to relax, stay on the job, and visit health services in the morning.

As to defendants Meyers and Eobstel, Plaintiff stated:

> Every morning, at work call, [Plaintiff] painfully
> walked to FPI gate to inform FPI Correctional Officer
> he remained in extreme pain.  Meyers usually instructed
> him to return to his housing unit or visit health
> services.  But, some FPI supervisors acted with
> deliberate indifference and treated Plaintiff as if he
> was faking his injury.  For example, UNICOR Manager
> Jeff Eobstel wanted to terminate Plaintiff's
> employment, would not grant him convalescent leave,
> instructed him to maintain his regular work
> assignments, and asked him to sign a written warning
> for not complying with his orders, in spite of
> Plaintiff's documented injury.  Plaintiff refused to
> sign said warning.

(Complt., p. 4).  Plaintiff does not mention these defendants anywhere else in the complaint.

13

As to defendant Meyers, it is clear that Plaintiff has not asserted a claim against him that would survive this motion to dismiss. He states that defendant Meyers would instruct him to return to his housing unit or to medical when he complained of pain. Thus, defendant Meyers will be dismissed from this action.

As to defendants James and Eobstel, Plaintiff claims they were deliberately different to his medical needs, as supervisors on his job, because they encouraged him to work and for other reasons stated above.

The Third Circuit has examined the case where a prisoner was under medical care, and attempted to sue non-medical prison officials. The Court held:

> Durmer v. O'Carroll, 991 F.2d 64 (3d Cir.1993), resembles the case at bar in that the plaintiff-prisoner (Durmer) sued both medical and non-medical prison officials. With respect to the non-medical prison officials, Barker and Fauver, we explained:
>
>> [W]e believe that summary judgment was proper with respect to defendants Barker and Fauver. The only allegation against either of these two defendants was that they failed to respond to letters Durmer sent to them explaining his predicament. Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.
>
> Id. at 69 (footnote omitted). Although Durmer was decided at the summary judgment stage, its holding can be readily imported into the motion-to-dismiss stage: If a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be

14

>justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.
>
>Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official like Gooler will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference. Thus dismissal of Spruill's claims against Gooler after the point at which Spruill was first under medical care is appropriate because Spruill bears the burden of proving (and hence pleading) facts supporting the defendants' mental states, see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001), and he has failed to so plead with respect to Gooler.

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)(footnote omitted).

This Court finds that this reasoning applies to defendant Eobstel, because Plaintiff pleads that defendant Eobstel wanted to terminate his employment, would not grant him convalescent leave, instructed him to maintain his regulary work assignments, etc., "in spite of Plaintiff's documented injury." Thus, as non-medical personnel, defendant Eobstel generally was "justified in believing that the [Plaintiff] [was] in capable hands" since

Plaintiff's injury was already documented and Plaintiff was being treated by medical personnel for the injury.

Plaintiff's claims against defendant James concern actions by James which occurred at the time of the injury.  He states that immediately after hurting his back, he reported the incident to defendant James.  Plaintiff was advised by defendant James to continue working and see health services in the morning. Plaintiff was actually seen that evening at health services. This Court finds that Plaintiff has not pled deliberate indifference by defendant James, as Plaintiff does not allege that his condition was so dire and obvious that defendant James' failure to summon immediate medical attention that moment amounted to deliberate indifference.  The facts as Plaintiff himself describes them simply do not amount to the examples of "deny[ing] reasonable requests for medical treatment ... expos[ing] the inmate to undue suffering" or "knowledge of the need for medical care" coupled with an "intentional refusal to provide that care" as set forth in <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3d Cir. 1987) (quotation marks and citations omitted).  Therefore, Plaintiff has not stated a claim against James, and defendant James will be dismissed from this suit.

6. <u>Jobs/Programs Claim</u>

Plaintiff alleges in his complaint that defendant Federal Prison Industries and its employees did not properly handle his medical issues, did not pay him for certain time missed due to his injury, and transferred him from the UNICOR job to food services.

Plaintiff's claims concerning his UNICOR employ are meritless. As noted, in <u>Bivens</u>, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001). However, since it is long established that "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner," <u>Sandin v. Conner</u>, 515 U.S. 472, 478 (1995), Plaintiff's employment-related allegations do not state a claim: prisoners have no protected liberty or property interest in retaining any particular prison.[2] See <u>Bulger v. United States Bureau of Prisons</u>, 65 F.3d 48 (5th Cir. 1995) (federal inmate has no liberty or property interest in a Federal Prison Industries

---

[2] Plaintiff's allegations do not suggest that any other constitutional clause of the Fourteenth Amendment could be implicated in this matter, e.g., Plaintiff does not assert that he was discriminated as a member of a protected class.

17

job assignment); James v. Quinlan, 866 F.2d 627 (3d Cir. 1989) (same); Garza v. Miller, 688 F.2d 480, 486 (7th Cir. 1982).

While Plaintiff's complaint clearly indicates that he was upset with his transfer to food services, and the manner in which his medical issues were handled by defendant FPI, he has provided the Court with no legal basis for remedy.  Therefore, Plaintiff's claims based on his UNICOR employ will be dismissed.

   7.   Remaining Defendants

Plaintiff names the doctors and medical staff at the prison for acting deliberately indifferent to his medical needs, specifically: Manuel Calaguio, Sam Syjontian, Dr. Filepo Patel, and Dr. Nicolette Turner-Foster.  While it is clear, as Defendants argue, that Plaintiff did receive medical care, it is unclear, at this stage of the proceedings, whether or not these medical defendants were deliberately indifferent to serious medical needs by denying Plaintiff's request to see a specialist, or provide him further care considering Plaintiff's symptoms. Defendants will be ordered to answer the claims concerning these defendants, and discovery shall be exchanged in order to determine if Plaintiff is entitled to relief.  Defendants are, of course, welcome to bring a motion for summary judgment during or after discovery.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is granted as to defendants Federal Correctional Institution[3], Federal Prison Industries, James, Meyers, Eobstel, Grondolsky and Spaulding, and is denied, in part, as against the "medical defendants:" Calaguio, Syjontian, Patel, and Turner-Foster.  The medical defendants will be ordered to answer the allegations of the complaint.  An appropriate Order accompanies this Opinion.

                                            s/Robert B. Kugler
                                            ROBERT B. KUGLER
                                            United States District Judge

Dated: September 19, 2010

---

[3] As to Defendant Federal Correctional Institution, sovereign immunity bars lawsuits against the United States and its agencies, unless Congress has specifically waived that immunity.  See United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Testan, 424 U.S. 392, 399 (1976).  The United States has not waived it sovereign immunity for suits alleging constitutional torts.  See Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 477-78 (1994).  Therefore, a Bivens action for civil damages cannot be brought against the United States or its agencies or instrumentalities.  See id. at 485-86; Johnstone v. United States, 980 F. Supp. 148, 151 (E.D. Pa.1997) (finding that sovereign immunity precludes a Bivens action for damages against the Bureau of Prisons); Martinez v. Williams, No. 89-5641, 1989 WL 129849, at *1 (E.D. Pa. Oct. 23, 1989) (finding that sovereign immunity precludes a Bivens action for damages against a Federal Correctional Institution).  As a result, Plaintiff's Bivens claims against the FCI Fort Dix is improper and must be dismissed.